IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAY M. RINGGOLD, SR.           )
                               )
            Plaintiff,         )
                               )
      v.                       )      C.A. No. 22-1496-JLH-SRF
                               )
MARTIN O'MALLEY,[1]            )
Commissioner of Social Security, )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Jay M. Ringgold, Sr. ("Plaintiff"), who proceeds *pro se*, filed this action pursuant to 42 U.S.C. § 405(g) against defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. (D.I. 2) Presently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner. (D.I. 12; D.I. 14)[2] For the following reasons, I recommend that the court GRANT the Commissioner's motion for summary judgment and DENY Plaintiff's motion for summary judgment.[3]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023 and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The briefing on the pending motions is found at D.I. 13, D.I. 15, and D.I. 17.

[3] On March 20, 2024, Plaintiff submitted a filing titled "Second Motion for Summary Judgment." (D.I. 19) This filing reiterates the request for relief made in Plaintiff's original motion for summary judgment and presents no new substantive arguments. (*Id.*) Consequently, I recommend that the court terminate the second motion at D.I. 19 consistent with the recommendations herein.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed his initial claim for supplemental security income with the Social Security Administration (hereinafter "SSA") on October 15, 2018, alleging disability starting on June 10, 2018. (D.I. 7 at 350-58) His claim was denied initially in February of 2019 and on reconsideration in July of 2019. (*Id.* at 300-07) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on August 3, 2020. (*Id.* at 236-81) The ALJ issued an unfavorable decision on July 22, 2021, finding that Plaintiff could perform a range of sedentary work. (*Id.* at 220-31) The Appeals Council subsequently denied Plaintiff's request for review on September 21, 2022, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-8) Plaintiff brought this civil action on November 15, 2022. (D.I. 2)

### B.   Medical Evidence

Plaintiff was 39 years old when he filed his application for SSI benefits on October 15, 2018 after sustaining a gunshot wound four months earlier. (D.I. 7 at 350) The ALJ found that Plaintiff had the following severe impairments: right lower extremity nerve damage, internal fixation of femur, and depression. (*Id.* at 223) The court focuses its summary of the medical evidence on the records relevant to Plaintiff's physical impairments, which are the subject of Plaintiff's appeal.

#### 1.   Treatment records

On June 10, 2018, Plaintiff suffered a gunshot wound to his right posterior thigh. (D.I. 7 at 534-35) He drove himself to the hospital, where evaluations revealed a fracture to his right femur. (*Id.* at 534) The following day, Plaintiff underwent surgery to repair the femoral fracture using a femoral hardware system. (*Id.* at 539-40) Following surgery, Plaintiff underwent

physical therapy and was able to bear weight and walk using a rolling walker. (*Id.* at 530) Plaintiff was discharged on June 14, 2018. (*Id.*)

Plaintiff visited orthopedist Michael Principe for x-rays and a post-operative examination on June 25, 2018. (*Id.* at 799) Plaintiff reported experiencing intermittent aching and throbbing pain that disrupted his sleep, as well as bruising, numbness, stiffness, and tingling in his right leg. (*Id.*) He stated that bending, exercise, stairs, and walking aggravated his symptoms. (*Id.*) Dr. Principe indicated that Plaintiff's x-rays showed acceptable alignment of the femur, his incisions were well-healed, and Plaintiff could walk with the assistance of a walker, exhibiting an antalgic gait. (*Id.*)

The following month, Dr. Principe stated that Plaintiff could walk with the use of crutches, but he exhibited significant tenderness and hypersensitivity along the back of his right thigh. (*Id.* at 797) Plaintiff reported constant aching, burning, sharp, stabbing, and throbbing pain in addition to stiffness, swelling, and tingling, which Dr. Principe attributed to aggravation of Plaintiff's sciatic nerve injury. (*Id.*) Plaintiff's pain was no longer constant by October of 2018, and he reported that rest and ibuprofen improved his symptoms. (*Id.* at 795)

Plaintiff started outpatient physical therapy in July of 2018, and he was discharged from physical therapy at his own request in October of 2018. (*Id.* at 453, 508) At the beginning of his physical therapy sessions, Plaintiff had decreased range of motion, decreased tolerance to activities of daily living, difficulty climbing stairs and walking without an assistive device, and increased pain when bearing weight on his right lower extremity. (*Id.* at 508) By the time of his discharge, he was able to ambulate with a single point cane. (*Id.* at 509) His range of motion was "within functional limits," and his strength in the right lower extremity was a four out of

five. (*Id.* at 510) Plaintiff reported having difficulty walking more than two blocks, getting in and out of the car, and going up and down steps. (*Id.*)

On October 18, 2018, Plaintiff went to the emergency room with reports of severe pain in his right leg. (*Id.* at 553) Treatment notes indicate that Plaintiff had recently stopped taking Gabapentin and was taking only Tylenol for his pain. (*Id.*) Plaintiff was able to walk with a cane at the hospital despite the pain. (*Id.*) An examination revealed mild tenderness in his right hip, right medial thigh, and right calf, no calf swelling, no erythema or warmth, and 4/5 strength with flexion and extension of the right hip and knee. (*Id.* at 554) The examining physician indicated that Plaintiff's symptoms were most likely due to nerve pain, and she prescribed Gabapentin and ibuprofen. (*Id.*)

The next week, Plaintiff followed up with Dr. Principe. (*Id.* at 611) X-rays showed evidence of distal screw breakage, but Dr. Principe indicated that the broken screw was unlikely to be a cause of Plaintiff's pain. (*Id.*) Dr. Principe's examination revealed minimal pain in the distal femur, moderate swelling in the right lower extremity, and no restrictions or pain associated with Plaintiff's hip motion. (*Id.*) He noted that Plaintiff complained of intermittent severe pain which increases with weight bearing. (*Id.*) Nonetheless, Dr. Principe's notes indicate that Plaintiff was using a cane and bearing weight as tolerated. (*Id.*)

Plaintiff started treating with Erich Gottwald, DO, a pain management specialist, on January 8, 2019. (*Id.* at 630) Dr. Gottwald indicated that Plaintiff was independent in his activities of daily living and ambulation with the use of a cane, and manual muscle testing in the right lower extremity revealed largely normal results. (*Id.*) An electrodiagnostic study of his right leg revealed an injury to his sciatic nerve likely resulting from the gunshot wound. (*Id.* at

4

631)  Another electrodiagnostic study conducted on July 30, 2019 showed no significant

changes, and Dr. Gottwald observed more atrophy due to disuse of the limb.  (*Id.* at 664)

At a follow-up visit in September of 2019, Plaintiff reported no change in his pain.  (*Id.* at

688)  However, his treatment record indicated that he was employed and exercised five to six

times per week.  (*Id.* at 689-90)  A musculoskeletal exam revealed 4/5 strength in the right knee

and foot.  (*Id.* at 690)  He was encouraged to resume normal activities as tolerated.  (*Id.* at 691)

In February of 2020, Plaintiff saw his primary care physician, Dr. Pasquale Fucci, who

observed that Plaintiff had a hard time walking, had lost a significant amount of weight, and used

medical marijuana to manage his pain.  (*Id.* at 747-48)  Dr. Fucci indicated that Plaintiff had a

normal range of motion, normal strength, a normal gait, and no tenderness or swelling.  (*Id.* at

750)  In August of 2020, Plaintiff returned to Dr. Fucci after experiencing a fall when he lost his

balance on a set of stairs.  (*Id.* at 732)  Dr. Fucci indicated that Plaintiff's gait was unsteady and

he used a cane for assistance.  (*Id.*)  Plaintiff continued to report pain in his right leg.  (*Id.* at 732-

34)

Plaintiff submitted several medical records to the Appeals Council that were not

considered by the ALJ.  (D.I. 7 at 16-41, 50-211)  Because this evidence was not before the ALJ,

it cannot be considered by the district court in its review under the substantial evidence standard.

*See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (explaining that remand

cannot be based on records that were not before the ALJ).[4]  Consequently, the court does not

summarize those records here.

---

[4] A "new evidence" remand may be warranted under the sixth sentence of 42 U.S.C. § 405(g) if
the claimant establishes that: (1) the evidence is new and not cumulative; (2) the evidence is
material, supporting "a reasonable possibility that the new evidence would have changed the
outcome" of the Commissioner's determination; and (3) there is "good cause for the failure to
incorporate such evidence into the record in a prior proceeding." *Szubak v. Sec'y of Health &*

2. **Opinion evidence**

On February 19, 2019, state agency physician Vinod Kataria, M.D., reviewed Plaintiff's medical records and determined that Plaintiff's condition had "notably improved" since its onset, describing his symptoms as "resolving." (*Id.* at 288-89) Dr. Kataria opined that Plaintiff could walk with a cane for a quarter mile to a half mile before needing to rest. (*Id.* at 288) Dr. Kataria found Plaintiff's statements regarding his symptoms to be only partially consistent with his treatment records. (*Id.* at 289) He estimated that Plaintiff could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (*Id.*) He concluded that Plaintiff was capable of light work with postural and environmental limitations. (*Id.* at 290)

On reconsideration in July of 2019, state agency physician Darrin Campo, M.D., opined that Plaintiff was capable of sedentary work. (*Id.* at 293) Dr. Campo stated that Plaintiff could stand and walk for four hours, and sit for six hours, in an eight-hour workday. (*Id.* at 294) Based on the medical findings of mild weakness in the right lower extremity and Plaintiff's progress during physical therapy, Dr. Campo indicated that the severity of Plaintiff's reported symptoms was only partially consistent with the medical record. (*Id.* at 296)

Plaintiff underwent a consultative medical examination with Dr. Irwin Lifrak on July 1, 2019. (*Id.* at 653-57) During the examination, Plaintiff estimated that he could walk approximately one block and climb a flight of stairs between twelve and thirteen steps with the

---

*Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff has not met his burden to show that the three requirements are satisfied in this case. *See Snyder v. Kijakazi*, 2022 WL 13801072, at *11 (E.D. Pa. Oct. 21, 2022). Consistent with the conclusion of the Appeals Council, the court finds it is not reasonably possible that the first set of additional evidence would change the ALJ's decision. (D.I. 7 at 6, 50-211) Moreover, because the second set of additional evidence is dated May 18, 2022 through May 25, 2022, it does not affect the ALJ's decision about whether Plaintiff was disabled on or before July 22, 2021. (D.I. 7 at 16-41) Evidence is "material" when related in some way to the period in which benefits were denied and creates a reasonable possibility of a different decision by the Commissioner. *Szubak*, 745 F.2d at 833. Consequently, the new evidence does not provide a basis for remand.

assistance of a cane. (*Id.* at 653) Plaintiff also stated that he would be able to sit for two hours and stand for less than one hour in an eight-hour workday. (*Id.* at 653-54)

Dr. Lifrak's physical examination confirmed that Plaintiff walked with a moderate limp when using a cane, he was able to take several steps without the aid of an assistive device, and he could get on and off the examination table without assistance. (*Id.* at 654-55) Plaintiff exhibited no muscle atrophy and 4/5 strength in his right lower extremity. (*Id.* at 655) Dr. Lifrak suggested that Plaintiff's pain was likely caused by his traumatic injury in combination with possible degenerative joint disease. (*Id.* at 656) He opined that Plaintiff could walk up to a block with a single-point cane, climb at least seven to eight stairs, sit for up to six hours in an eight-hour workday, and stand for four hours during an eight-hour workday. (*Id.* at 656-57)

No treating source gave a medical opinion regarding Plaintiff's capacity to work. (D.I. 15 at 13-14)

## C. Hearing Before the ALJ

### 1. Plaintiff's testimony

During the hearing before the ALJ on August 3, 2020, Plaintiff testified that he lives in the basement of his mother's house and can navigate the stairs by holding the railing in his left hand and the cane in his right hand. (*Id.* at 264) He helps around the house by cooking and cleaning, and on the day of the hearing, he assisted his mother by picking her car up from the repair shop. (*Id.* at 264-65) He spends time with his girlfriend and paints as a hobby. (*Id.* at 265-66) He tried to find work driving for a ride share, but he was not hired due to his use of medical marijuana. (*Id.* at 268)

Plaintiff testified that his doctors have not recommended any additional procedures or treatments. (*Id.* at 267) He described his pain as constant since the date of the shooting, and it is

worsened by rainy weather. (*Id.* at 268) His pain prevents him from sleeping and decreases his appetite. (*Id.* at 272-73) He indicated he could not stand or walk for more than fifteen minutes at a time, and he requires the use of a cane to walk. (*Id.* at 259, 261)

### 2. Vocational expert's testimony

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> [The claimant is] able to stand and walk up to four hours in an eight-hour workday. Able to sit up to six hours in an eight-hour workday. Able to use a cane for ambulation to and from the workstation or work area. Occasionally able to climb ramps or stairs. Never able to climb ladders, ropes, or scaffolds. Occasionally able to balance, stoop, kneel, crouch, or crawl. Limited to occasional use of the right lower extremity for pushing, pulling, or operation of foot controls. Would need to avoid concentrated exposure to extreme cold, damp, or wet conditions. Would need to avoid concentrated exposure to vibration. And would need to avoid work at unprotected heights.

(*Id.* at 274-75) The VE testified that such a claimant would be limited to performing sedentary jobs where he or she could use a cane in one hand to maneuver and could carry an object of ten pounds or less in the other. (*Id.* at 276) The VE indicated that such a hypothetical individual would be able to perform the unskilled, sedentary jobs of order clerk, addresser, and final assembler. (*Id.*)

The ALJ then asked if the VE's analysis would be impacted if the hypothetical individual also needed to adjust position every forty-five minutes while remaining at or near the workstation. (*Id.*) The VE confirmed that this additional limitation would not preclude work as an order clerk, addresser, or final assembler. (*Id.* at 276-77) Similarly, the added limitations of being able to understand and remember simple routine instructions and carry out repetitive tasks, being able to make simple, work-related decisions, and being able to deal with minor or few changes in a routine work setting would not have an impact on the hypothetical individual's ability to perform the positions identified. (*Id.* at 277)

### D. The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the October 15, 2018 application date through the date of the ALJ's decision.  (D.I. 7 at 220-31)  The ALJ found, in pertinent part:

1. The claimant has not engaged in substantial gainful activity since October 15, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: right lower extremity nerve damage and internal fixation of femur and depression (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except he is able to use a cane for ambulation to and from the workstation or work area.  He is occasionally able to climb ramps or stairs, never able to climb ladders, ropes, or scaffolds, and occasionally able to balance, stoop, kneel, crouch, or crawl.  He is limited to occasional use of the right lower extremity for pushing/pulling or operation of foot controls.  He must avoid concentrated exposure to extreme cold, damp, or wet conditions, concentrated exposure to vibration, and work at unprotected heights.  He must be able to adjust positions every 45 minutes while remaining at or near the workstation or work area.  He is able to understand and remember simple, routine instructions and carry out repetitive tasks, is able to make simple, work-related decisions, and is able to deal with minor or few changes in a routine work setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant . . . was 39 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 15, 2018, the date the application was filed (20 CFR 416.920(g)).

(*Id.* at 223-31)

## II.   STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "'more than a mere scintilla'" of evidence. *Biestek*, 139 S. Ct. at 1154. Additionally, when reviewing the record for substantial evidence, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

## III.   DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A disability is defined for

purposes of SSI as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at § 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at § 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at § 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

## B.  Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff challenges the ALJ's assessment of his subjective complaints of pain and self-described limitations in formulating the RFC assessment. (D.I. 13 at 2) According to Plaintiff, his pain prevents him from standing or sitting for more than a few minutes at a time or taking more than a few steps with or without a cane. (*Id.* at 3) He stresses the permanent nature of the nerve damage he sustained and the lack of improvement in his condition over time. (*Id.* at 4) The Commissioner responds that substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints of pain were not sufficiently supported by Plaintiff's activities

of daily living, his longitudinal treatment records, and the medical source opinions.  (D.I. 15 at 12-14)

Substantial evidence supports the ALJ's assessment of Plaintiff's functional abilities.  "A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  However, an ALJ is only required to account for "a claimant's credibly established limitations," and need not include every alleged impairment.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  The ALJ's RFC assessment accounted for Plaintiff's credibly established limitations in the instant case.  The ALJ expressly accounted for Plaintiff's use of a cane for walking, consistent with the medical opinion evidence and Plaintiff's reported and documented use of a cane throughout the relevant period.  (D.I. 7 at 225, 229)  The ALJ also limited Plaintiff to unskilled, sedentary work with additional postural and environmental limitations to accommodate his complaints of pain and mobility issues.  (*Id.*)

An ALJ is required to give significant weight to a claimant's subjective complaints and alleged functional limitations only when those allegations are supported by competent medical evidence.  *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006).  If the ALJ determines that a claimant's allegations of subjective pain and resulting limitations are not totally credible based on other evidence of record, the reviewing court generally defers to the ALJ's credibility determination.  *Id.*; *see also Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir. 2021) ("A claimant's own statements about pain or symptoms are not, by themselves, sufficient to establish that he is disabled.").  Here, the ALJ assessed the credibility of Plaintiff's subjective complaints of pain and explained why he found that they were not fully consistent

with Plaintiff's activities of daily living or his history of conservative medical treatment.  (D.I. 7 at 229)

The ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of his activities of daily living.  (*Id.* at 226)  For instance, the ALJ noted Plaintiff's statement that he could walk and stand for no more than ten to fifteen minutes at a time contradicted his prior representations that he could walk between a quarter mile and a half mile, and he only required the use of a cane when walking further than two room lengths.  (*Id.* at 226-27)  The ALJ also cited Plaintiff's representations that he could perform household chores, run errands such as grocery shopping, and drive independently.  (*Id.* at 226-27, 29)  Additionally, Plaintiff's representation during the hearing before the ALJ that he had tried to look for work was inconsistent with his statements that the severity of his pain precludes him from working.  (*Id.* at 227)  The ALJ properly considered these inconsistent representations when assessing the credibility of Plaintiff's subjective complaints.  *See Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 803 (3d Cir. 2007) (upholding ALJ's determination that the claimant's statements concerning her subjective symptoms were inconsistent with her activities of daily living and medical records and were therefore not credible).

The ALJ also concluded that Plaintiff's subjective complaints were inconsistent with his conservative medical treatment throughout the relevant period.  (D.I. 7 at 227)  Following Plaintiff's surgery, the ALJ noted that Plaintiff's treatment was largely limited to physical therapy, which he discontinued after several months at his own request.  (*Id.* at 227)  The ALJ cited Plaintiff's physical therapy and pain management records, which showed his range of motion was within functional limits, he retained 4/5 strength in his right lower extremity, and he

was counseled to resume normal activities as tolerated. (*Id.* at 227-28) Medical records from

Plaintiff's orthopedist cited in the ALJ's decision indicated that Plaintiff's surgical incisions

healed well, and Plaintiff denied constant nerve pain four months after surgery. (*Id.*)

Throughout the relevant period, the ALJ noted that Plaintiff's pain was conservatively treated at

various points with Gabapentin, ibuprofen, Neurontin, or medical marijuana. (*Id.* at 227-29)

Because Plaintiff's statements concerning his subjective symptoms are not consistent with these

various medical reports, the ALJ was not required to credit Plaintiff's subjective complaints. *See*

*Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002) (upholding ALJ's determination

rejecting claimant's subjective complaints of pain where those complaints were inconsistent with

his activities of daily living, other parts of the claimant's own testimony, and the lack of

significant medical evidence or a medical opinion supporting his subjective assessment of his

limitations).

   This court is bound to follow the substantial evidence standard on appeal.  The court

cannot review the case anew and substitute its own judgment in place of the ALJ who considered

the entire record in reaching his decision. *See Gaddis v. Comm'r of Soc. Sec.*, 417 F. App'x 106,

107 n.3 (3d Cir. 2011) ("Where the Commissioner's findings of fact are supported by substantial

evidence, courts are bound by those findings even if they would have decided the factual inquiry

differently—*i.e.*, we are not permitted to weigh the evidence or substitute our own conclusions

for those of the fact-finder.").  Because the ALJ's decision to discount Plaintiff's subjective

complaints was based on consideration of the objective medical evidence and other evidence of

record, substantial evidence exists to support the ALJ's determination. *See Hall v. Comm'r of*

*Soc. Sec.*, 218 F. App'x 212, 215 (3d Cir. 2007) (stating that an ALJ "may reject a claimant's

subjective testimony if [he] does not find it credible so long as [he] explains why [he] is rejecting

the testimony.").

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the court DENY Plaintiff's motion for summary judgment, (D.I. 12), and GRANT the Commissioner's motion for summary judgment, (D.I. 15).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to paragraph 2 of the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  March 21, 2024

Sherry R. Fallon
United States Magistrate Judge